# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LANG,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,[1]<br><br>　　　　　Defendant.<br>_____/ | Case No. 1:18-cv-01605-SKO<br><br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br><br>(Doc. 1) |

## I.　　INTRODUCTION

On November 20, 2018, Plaintiff Stephanie Lang ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019). He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9.)

## II. FACTUAL BACKGROUND

On July 23, 2014, Plaintiff protectively filed an application for DIB and SSI payments, alleging she became disabled on February 1, 2014, due to epilepsy, stroke, scoliosis, and headaches. (Administrative Record ("AR") 19, 22–23, 112–13.) Plaintiff was born on June 9, 1970 and was 44 years old when she filed the application. (AR 112.) She has a high school education, past work experience as a receptionist and caregiver, and last worked full-time in 2011. (AR 25, 125–26.)

### A. Summary of Relevant Medical Evidence[3]

#### 1. Doctors Medical Center of Modesto

On February 27, 2014, Plaintiff was admitted to Doctors Medical Center of Modesto after waking up from a nap with slurred speech and left-side weakness. (AR 411.) Plaintiff was found to have an "intracranial hemorrhage," which her attending physicians drained on March 2, 2014. (AR 420–21.) Plaintiff was discharged on March 14, 2014. (AR 411.) Plaintiff was admitted again on June 9, 2014 after having a seizure and was discharged on June 14, 2014 and directed to attend physical therapy. (AR 465.) Plaintiff was admitted on subsequent occasions after having seizures on November 23, 2015, (AR 838), March 9, 2016, (AR 806), June 12, 2016, (AR 1135), October 12, 2016, (AR 1045), and March 4, 2017, (AR 650).

#### 2. Jeffrey R. Levin, M.D.

On July 30, 2014, Plaintiff saw neurologist Jeffrey Levin. (AR 524.) Dr. Levin noted Plaintiff had a flat affect with inappropriate emotions. (AR 524.) Dr. Levin continued Plaintiff on Dilantin and instructed her not to swim or bathe alone, and not to drive. (AR 525.) Plaintiff returned to Dr. Levin on November 18, 2014, and her condition remained the same. (AR 605.) On December 30, 2014, her affect had improved and she was able to smile. (AR 604.) Dr. Levin recommended Plaintiff not return to work due to her muscle weakness and depressive disorder. (AR 604.) On

---

[3] As Plaintiff's assertions of error related to the evidence are generally limited to the ALJ's assessment of medical evidence and testimony related to Plaintiff's mental impairments, (*see* Doc. 13 at 15–29), only evidence relevant to those arguments is set forth below.

July 21, 2015, Dr. Levin noted again that Plaintiff had a flat affect. (AR 662.) On August 25, 2016, Dr. Levin suggested a nerve stimulator due to Plaintiff's intractable seizures and severe depression. (AR 658.) On November 8, 2016, Dr. Levin continued Plaintiff on her medications and referred her for implantation of the nerve stimulator. (AR 657.)

### 3. Jason T. Lee, M.D.

On May 16, 2014, Plaintiff established care with family practice physician Jason T. Lee. (AR 544–46.) Dr. Lee noted that Plaintiff's intracranial hemorrhage operation on March 2, 2014 had caused "subdural hematoma and L hemiparesis." (AR 544.) Plaintiff returned to Dr. Lee on June 20, 2014, and Dr. Lee noted that Plaintiff's seizures were her main issue and they were causing an "altered level of consciousness." (AR 541–42.)

### 4. Robert L. Morgan, Ph.D.

On November 20, 2014, Plaintiff attended a consultative examination with psychologist Robert L. Morgan. (AR 585.) Plaintiff reported memory issues, diminished energy, difficulty sleeping, depression, and lack of social activity. (AR 586–87.) Dr. Morgan noted Plaintiff had a moderately depressed mood with a flat, fixed, unchanged affect, and she took long pauses before answering questions. (AR 589.) Dr. Morgan noted that Plaintiff's cognitive functioning had declined since her subdural hematoma. (AR 586.) Dr. Morgan found Plaintiff had an IQ of 71 with extremely low functioning memory. (AR 590–91.) Dr. Morgan diagnosed cognitive disorder and depressive disorder with a GAF score of 50. (AR 591.) Dr. Morgan submitted a medical source statement, opining that Plaintiff was moderately impaired in her ability to maintain activities of daily living, understand, carry out, and remember simple instructions, be aware of normal hazards, and use public transportation, and markedly impaired in her ability to maintain concentration, persist in work-related activities, maintain social functioning, maintain social interaction with coworkers, supervisors, and the public, perform work activities without special supervision, and deal with normal work pressures. (AR 592–93.)

### 5. State Agency Physicians

On February 13, 2015, Nadine Genece, Psy.D., a Disability Determination Services medical consultant, assessed Plaintiff's mental residual functional capacity (RFC).[4] (AR 123–25.) Dr. Genece opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others, make simple work-related decisions, accept instructions and respond appropriately to criticism, get along with coworkers without exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (AR 123–25.) Dr. Genece opined that Plaintiff had marked limitations in her ability in maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workday without interruptions from her psychological symptoms, and interact appropriately with the public. (AR 124–25.) Dr. Genece limited Plaintiff to no more than simple interaction with supervisors and coworkers and no contact with the general public. (AR 125.) Dr. Genece also stated that Plaintiff "would [function] best away from the general public." (AR 120.)

Upon reconsideration on June 3, 2015, another Disability Determination Services medical consultant, E. Murillo, M.D., largely affirmed Dr. Genece's RFC findings. (AR 157–58.) Dr. Murillo also limited Plaintiff to no more than simple interaction with supervisors and coworkers and no contact with the general public. (AR 158.) Dr. Murillo endorsed Dr. Genece's statement that Plaintiff "would [function] best away from the general public." (AR 155.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 13, 2015, and again on reconsideration on July 15, 2015. (*See* AR 180–84, 187–93.) On August 24, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 194–95.)

On April 20, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 56–96.) Plaintiff testified that since she had a stroke in early 2014, she has been unable to drive and has had periodic seizures. (*See* AR 64.) She stated that after her stroke she "couldn't use the left side of [her] body" and still has weakness in the left side of her body. (AR 69.) She testified that she cannot see or hear as well as she could before the stroke, has memory loss, and has headaches every day. (AR 69.) Plaintiff stated that she now has a "difficult time cleaning" and has a hard time doing simple things, in part because her leg and arm on her left side are so weak. (AR 70–71.) She testified that she had a "nerve stimulator" surgically implanted to help control her seizures when her medications began working less effectively and her doctor was concerned that she "was leading up to another stroke which might have killed [her.]" (AR 77.) Plaintiff testified she still takes her seizure medications, which make her drowsy, and she also takes medication for her depression. (AR 79.) She stated that her depression has gotten much worse since the stroke and her "self esteem has gone downhill drastically." (AR 80.) She also testified that she lives with her boyfriend and her boyfriend or his son drive her to doctor's appointments usually. (AR 64, 84.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a receptionist, Dictionary of Occupational Titles (DOT) code 237.367-038, which was sedentary work with a specific vocational preparation (SVP)[5] of 4; and a caregiver, DOT code 354.377-014, which

---

[5] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).

was medium work with a SVP of 3. (AR 89.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 89.) The VE was also to assume this person could lift and carry no more than ten pounds frequently or twenty pounds occasionally; sit for six hours and stand and walk for six hours; occasionally use foot controls with the left lower extremity; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch or crawl; occasionally, with the left hand, handle, grasp and make a torqueing motion; cannot be exposed to unprotected heights or exposed dangerous mechanical parts; cannot operate a motor vehicle or be exposed to other similar hazards; and can perform standard, simple, routine tasks, with a SVP of 1 or 2, that can be learned by demonstration or observation and then performed by rote. (AR 89–90.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 90.) The VE testified that such a person could perform the following other jobs: furniture rental consultant, DOT code 295.357-018, which was light work with a SVP of 2 and 52,347 jobs available in the national economy; usher, DOT code 344.677-014, which was light work with a SVP of 2 and 5,149 jobs available in the national economy; and child care attendant, DOT code 349.677-018, which was light work with a SVP of 2 and 5,467 jobs available in the national economy. (AR 90.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person was limited to lifting, carrying, pushing or pulling ten pounds frequently and twenty pounds occasionally, and occasional balancing, stooping, kneeling, crouching and crawling. (AR 91.) The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the job of callout operator, DOT code 237.367-014, which was sedentary work with a SVP of 2 and 6,531 jobs available in the national economy. (AR 92.) In a third hypothetical, the ALJ asked the VE to consider an individual with the same limitations

---

Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

described in the first hypothetical, except that the individual is off task at least twenty percent of the day and absent at least two days per month. (AR 92–93.) The VE testified that the individual would not be able to perform any work. (AR 93.)

Plaintiff's attorney asked the VE to consider hypothetical individuals that had the limitations described in the first hypothetical and the second hypothetical, respectively, but the person additionally would be limited to only occasional public contact. (AR 94–95.) The VE testified that the individual would not be able to perform any work in either hypothetical. (AR 94–95.)

**C.      The ALJ's Decision**

In a decision dated October 27, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act.[6] (AR 19–34.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 22–34.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2014 (step one). (AR 22.) At step two, the ALJ found that Plaintiff had the following severe impairments: "seizure disorder"; "history of subdural hematoma"; "cognitive disorder"; "borderline intellectual functioning"; "depressive disorder"; and "obesity." (AR 22.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 22.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff

---

[6] Acknowledging Plaintiff's previous application and the ALJ's previous decision denying benefits dated July 19, 2010, the ALJ found that Plaintiff had presented "persuasive evidence" of "significant 'changed circumstances'" since Plaintiff's prior application. (AR 19–20.) Accordingly, she concluded that Plaintiff had overcome the presumption related to the limitations found in the previous decision, and proceeded to impose new limitations and re-formulate Plaintiff's RFC. (*See* AR 20.)

retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally use the left upper extremity to push or pull; occasionally use foot controls with the left lower extremity; frequently climb ramps and stairs; cannot climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch or crawl; occasionally, with the left upper extremity, handle, grasp, and make a torqueing motion, this is non dominant upper extremity; cannot be exposed to unprotected heights or dangerous mechanical parts; cannot operate motor vehicles and cannot be exposed to other similar hazards; and can perform work standard simple routine tasks with an SVP of 1 or 2 that can be learned by demonstration or observation and performed by rote.

(AR 24.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 25.) At step five, the ALJ found that Plaintiff could not perform past relevant work. (AR 32.) The ALJ found that Plaintiff was a younger individual age 18–49 on the alleged onset date, had at least a high school education, and was able to communicate in English. (AR 32.) The ALJ then determined:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills[.]
>
> Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]

(AR 32–33) (citations omitted).

The ALJ found Plaintiff could perform the jobs of furniture rental consultant, usher, and child care attendant. (AR 33.) Therefore, the ALJ found Plaintiff was not disabled. (AR 33.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 21, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1484.

## III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts

9

to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*,

556 U.S. 396, 409 (2009) (citations omitted).

**IV.     DISCUSSION**

Plaintiff raises the following claims of error: (1) the ALJ improperly discounted the opinions of Dr. Morgan and the state agency physicians regarding Plaintiff's mental limitations, resulting in a mental RFC formulation unsupported by substantial evidence; (2) the ALJ erred in her evaluation of whether Plaintiff meets Listing 11.02(C); and (3) the ALJ that decided Plaintiff's case was unconstitutionally appointed. (*See* Doc. 13 at 2.) The Court agrees with Plaintiff that the ALJ erred in her evaluation of Dr. Morgan's opinion, and, for the reasons stated below, will remand the case for further proceedings consistent with this order.

**A.     The ALJ Erred in Her Evaluation of Dr. Morgan's Opinion**

**1.     Legal Standards**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holkham v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians

11

"are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), [7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

### 2. Analysis

The record reflects that Dr. Morgan examined Plaintiff on November 20, 2014. (AR 585–93.) Dr. Morgan completed a medical source statement in which he opined that Plaintiff was moderately impaired in her ability to maintain activities of daily living, understand, carry out, and remember simple instructions, be aware of normal hazards, and use public transportation, and markedly impaired in her ability to maintain social functioning, maintain concentration and persist in work-related activities, maintain social interaction with coworkers, supervisors, and the public, perform work activities without special supervision, and deal with normal work pressures. (AR 592–93.)

As to Dr. Morgan's opinion, the ALJ stated:

> The opinion of Dr. Morgan is given little weight. Although based upon examination of [Plaintiff], and review of evidence in the record, the opinion is inconsistent overall with evidence introduced at the hearing level. This includes evidence [Plaintiff] was treated with medication for depression and subsequently reported and demonstrated improvement of her symptoms and functioning. Dr. Morgan notes in the opinion very few records were reviewed, and no records prior to or beyond 2014, were considered. The evidence in the record reveals [Plaintiff] is able to present for appointments as pleasant, cooperative, and/or in no distress. She is able to communicate concerns and complaints to providers, staff and others. She has attended appointments on time and as scheduled. She is able to manage medications. She attends to her personal care and hygiene, can watch television, read, and play games (Exhibits B5E; B6E; and hearing testimony). Additionally, during this time she was able to maintain her relationship with her fiancé and live with others. Nevertheless, the diagnoses are consistent with intellectual testing performed on the date of the evaluation.

(AR 30.)[8]

Because Dr. Morgan's opinion as to Plaintiff's mental limitations was contradicted by some of the state agency physicians' findings,[9] the ALJ was required to state "specific and legitimate"

---

[8] The ALJ similarly discounted the opinions of the state agency physicians as to Plaintiff's social and adaptive limitations because "evidence introduced at the hearing level establishes [Plaintiff] has fewer limitations in social and adaptive functioning." (AR 28–29.) However, the ALJ accepted the state agency physicians' opinions as to Plaintiff's cognitive limitations. (AR 28–29.)

[9] Dr. Morgan's opinion as to Plaintiff's mental limitations was uncontradicted to the extent that all three physicians who submitted relevant opinions found that Plaintiff had moderate to marked social and adaptive limitations. (*See* AR 124–25, 157–58, 592–93.) Dr. Morgan's opinion is arguably contradicted in that Dr. Murillo found that Plaintiff was

13

reasons, supported by substantial evidence, for rejecting Dr. Morgan's opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1998); *see also Lester*, 81 F.3d at 830. The ALJ gave two reasons for discounting Dr. Morgan's opinion: (1) the opinion was inconsistent with the medical evidence; and (2) the opinion was inconsistent with Plaintiff's activities of daily living. (*See* AR 30.) The Court finds that neither reason is sufficiently specific and legitimate to discount Dr. Morgan's opinion, and the ALJ erred in her evaluation of Dr. Morgan's opinion.

### a. Objective Medical Evidence

The ALJ's first stated rationale—inconsistency with objective medical evidence—is not a valid basis to discount Dr. Morgan's opinion. In support of this rationale, the ALJ stated that Plaintiff "was treated with medication for depression and subsequently reported and demonstrated improvement of her symptoms and functioning." (AR 30.) However, the ALJ does not cite to anything in the record to support this finding, and the Court may not "comb the administrative record" to find support for it. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). The ALJ also stated that Dr. Morgan's opinion was inconsistent with evidence that Plaintiff "presents for appointments as pleasant," "is able to communicate concerns . . . to providers," and "has attended appointments on time[.]" (AR 30.) However, the fact that Plaintiff can compose herself enough to attend medical appointments at times is not necessarily inconsistent with Dr. Morgan's finding that Plaintiff is limited in her ability to interact with others in a work setting. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Further, elsewhere in her

---

"moderately limited" in her ability to interact appropriately with the public, while Dr. Morgan found that Plaintiff was "markedly limited" in her ability to maintain appropriate interaction with the public, (*compare* AR 158 *with* AR 593), and because Dr. Morgan did not make a specific finding as to whether Plaintiff may have contact with the public, while the state agency physicians found Plaintiff should have no contact with the public. (*Compare* AR 125, 158 *with* AR 593.) The Court notes that Dr. Murillo's assessment that Plaintiff was only moderately limited in interacting with the public appears to be inconsistent with his finding that Plaintiff must have no contact with the public. (*See* AR 158.) However, the Court will assess the ALJ's evaluation of Dr. Morgan's opinion under the standard applicable to contradicted medical opinions due to these inconsistencies.

14

opinion, the ALJ acknowledges that there are also treatment notes reflecting that Plaintiff presents at appointments with a "depressed mood and/or flat affect." (AR 27.) Significantly, the other medical opinion evidence in the record as to Plaintiff's mental impairments—the opinions of the state agency physicians—supports Dr. Morgan's opinion to the extent that the state agency physicians found that Plaintiff has social and adaptive limitations. (*See* AR 124–25, 157–58.) Specifically, both state agency physicians found that Plaintiff is either moderately or markedly limited in her ability to interact with the public and coworkers, and both found that Plaintiff should have no contact with the public. (*See* AR 124–25, 157–58.)

The ALJ also mentioned that Dr. Morgan reviewed "no records prior to or beyond 2014" and implied that Dr. Morgan's evaluation of Plaintiff was an insufficient basis for his opinion. (*See* AR 30.) This reason is not legitimate as "the Commissioner regularly relies on the opinion of one-time examiners to grant or deny cases." *See Gordon v. Commissioner of Social Security*, No. 2:18-CV-1781-DMC, 2019 WL 2433850, at *5 (E.D. Cal. June 11, 2019). Further, the ALJ accepted Dr. Morgan's opinion as to Plaintiff's cognitive limitations, thus her rejection of the portion of Dr. Morgan's opinion related to social and adaptive limitations "appears conclusion driven." *See id.* Further, the two state agency physicians both reviewed evidence beyond 2014 and agreed with Dr. Morgan that Plaintiff had social limitations. (*See* AR 124–25, 157–58.)

### b. Activities of Daily Living

The ALJ's other stated rationale for rejecting Dr. Morgan's opinion—Plaintiff's activities of daily living—is also not a valid basis to discount the opinion. The ALJ stated that Dr. Morgan's opinion was inconsistent with Plaintiff's ability to "manage medications[,]" "attend[] to her personal care and hygiene," "watch television, read, and play games[,]" "maintain her relationship with her fiancé and live with others." (AR 30.) However, these activities do not necessarily contradict Dr. Morgan's finding that Plaintiff is limited in her ability to interact with others in a professional work setting, and the ALJ provides no explanation as to how she believes these activities contradict Dr.

15

Morgan's opinion. *See Ghanim*, 763 F.3d at 1162 ("A claimant need not be completely incapacitated to receive benefits. [The claimant's] limited daily activities are not in tension with the opinions of his treating providers."); *Aguayo v. Commissioner of Social Security*, Case No. 1:18-cv-00785-EPG, 2019 WL 3714564, at *2 (E.D. Cal. Aug. 7, 2019). Accordingly, the Court finds the ALJ erred in her evaluation of Dr. Morgan's opinion regarding Plaintiff's mental limitations.

**B.     The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing

that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the ALJ's error was not harmless because the error caused the ALJ to formulate a mental RFC unsupported by substantial evidence. Thus, because the ALJ's error affected the RFC determination, which in turn affected the disability finding, the error was not harmless, *see, e.g., Molina*, 674 F.3d at 1115 (citations omitted) (stating that an error is harmless "where it is inconsequential to the ultimate nondisability determination"), and remand of this matter is appropriate.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

In her briefing, Plaintiff requests that the Court remand the case for a calculation of benefits or, in the alternative, remand the case for further administrative proceedings. (Doc. 13 at 29.)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted); *see also Brown-*

*Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("[E]ven if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy.").

In its discretion, the Court will remand this case to the agency because additional administrative proceedings and clarification of the ALJ's findings as to the medical opinion evidence would be useful. Specifically, on remand, the ALJ should re-evaluate the opinion evidence regarding Plaintiff's mental limitations in light of this order, and conduct any further proceedings deemed useful. *See Vaughn v. Berryhill*, 242 F.Supp.3d 998, 1010 (E.D. Cal. Mar. 17, 2017) (remanding case for further proceedings where the ALJ erred in her evaluation of the medical opinions of plaintiff's treating physicians, "for the ALJ to properly consider and discuss the treating physicians' opinions," direct any "further medical evaluation . . . necessary," and re-formulate the plaintiff's RFC). The ALJ should resolve any conflicts or ambiguities between the opinions of Dr. Morgan and the state agency physicians. *See Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."). The ALJ should also re-formulate Plaintiff's RFC and determine whether Plaintiff could perform any work considering any further mental limitations included in the re-formulated RFC.[10]

Accordingly, the Court will remand this case for further proceedings.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that the ALJ erred in her evaluation of Dr. Morgan's opinion and remand is appropriate for further proceedings consistent with this order, the Court does not reach Plaintiff's

---

[10] To the extent Plaintiff contends that if the Dr. Morgan's opinion were credited as true, the ALJ would be required to find Plaintiff disabled, Plaintiff has not established that the ALJ would be required to find Plaintiff disabled if Dr. Morgan's opinion, by itself, were credited as true and has not established that additional proceedings would not be useful. As stated above, additional proceedings would be useful for the ALJ to re-evaluate the opinion evidence and resolve inconsistencies and ambiguities, include appropriate limitations in Plaintiff's RFC, and pose further hypotheticals to the VE. *See Vaughn*, 242 F.Supp.3d at 1010 ("Any subsequent decision shall discuss what weight is assigned to each physician's opinion, the reasons for making such a determination, and why substantial evidence supports that conclusion.").

remaining assertions of error.  (*See* Doc. 20 at 13–16); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Stephanie Lang and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**March 11, 2020**__                    /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE